**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**      **No. 2:16-cr-00185**
  **v.**           **JUDGE GRAHAM**


**BEHROOZ BEHROOZIAN,**

    **Defendant.**


**<u>UNITED STATES SENTENCING MEMORANDUM</u>**


  The United States of America, by and through the undersigned counsel, submits this Sentencing Memorandum. Defendant Behrooz Behroozian ("Behroozian") plead guilty to all counts as alleged in an Information filed on September 9, 2016 for violation of 50 U.S.C. § 1705 and 31 C.F.R. §§ 560.203 and 560.204, Violation of the Emergency Economic Powers Act (IEEPA).

  For over a decade, Behroozian exported and caused the exportation of American-made Swagelok manifolds, valves, and connectors used for industrial pipelines in the gas and petrochemical (oil refinement) industry to the Islamic Republic of Iran ("Iran") in deliberate violation of a U.S. embargo and trade sanctions.  In so doing, Behroozian not only displayed a blatant disregard for the law on an international scale, but did so by making a calculated decision to sell-out the United States to its enemies abroad for $35,000 to $40,000 per-year.  Behroozian also attempted to cover-up his crimes by using Sumar Industrial Equipment (the "Sumar" company) as a middle man company when illegally supplying industrial equipment to an Iranian company called Arman Pisaro Sanao (the "Arman" company).  In other words, not only did

1

Behroozian use his considerable skills and expertise to do the bidding of one a state sponsor of terrorism, he also tried to conceal his criminal career with over a decade of deceit.

Neither party has any objections to the Presentence Investigation Report (PSR).  The PSR correctly states that the U.S. Sentencing Guidelines imprisonment range is 46 to 57 months, based on a total offense level of 23 and a criminal history category of I.  Count 1 (Violation of the Emergency Economic Powers Act) has a statutory maximum of 20 years (240 months).  Citing facts that may warrant departure and a sentence outside of the advisory guideline system, U.S. Probation ultimately recommends a sentence of 36 months and a term of supervised release of 2 years.

## I.      BACKGROUND

### A.      The Sanctions

Behroozian violated embargo and trade sanctions which were imposed upon Iran due to its nearly 40 year history as a state sponsor of terrorism; a history which includes the death of American servicemen in a terrorist attack committed at the direction of the Iranian government.  On November 4, 1979, Iranian students occupied the U.S. embassy in Tehran and took 52 Americans hostage for over 440 days.  Then on October 23, 1983, members of Hezbollah, an Iranian-funded terrorist group, drove a fake water truck carrying an explosive device into the center of the U.S. Marine barracks in Beirut which housed members of the American peacekeeping force in Lebanon.  Acting on orders from the Iranian government, Hezbollah detonated the explosive device and killed 241 American servicemen in the largest non-nuclear explosion in human history.  Due to the Iranian government's substantial role in this brutal terrorist attack, the U.S. designated Iran as a state sponsor of terrorism.

On May 6, 1995, President Clinton issued an executive order which banned the direct or

indirect sale, exportation, or supply of any American goods, services, or technology -- with limited exceptions for humanitarian aid and informational materials.   In other words, Behroozian endangered American national security interests by violating an embargo against a dangerous foreign adversary.

**B.        The Scheme**

Behroozian was born in Iran on January 2, 1955, and entered the United States in 1976. Behroozian has lived in the Columbus, Ohio area since 1979.  In November of 2006, Behroozian became the owner and operator of a computer parts supplier in Dublin, Ohio called Comtech International, LLC ("Comtech").  In reality, however, Comtech seldom exported computer parts, lacked a storefront, and made no domestic sales.  Instead, Comtech primarily exported industrial equipment to the United Arab Emirates ("U.A.E.") for the Dubai-based Sumar company.  Comtech continued to do so even after the U.S. Department of Commerce designated the Sumar company as an unreliable recipient of American goods due to evidence that the company was exporting them to Iran once they arrived in the U.A.E.

From January 1, 2004, through and including March 30, 2016, Behroozian used the Sumar company as a transactional middle man for his repeated illegal dealings with the Arman company. Behroozian knew that the U.S. had imposed a trade embargo upon Iran which covered the American goods that the Arman company acquired from him.  In order to disguise Behroozian's crimes as legitimate business transactions, he had Comtech ship American-made Swagelok manifolds, valves, and connectors to the Sumar company instead of attempting to export them directly to Iran.  Upon receiving the aforementioned goods from Comtech, the Sumar company would then export them from the U.A.E. to Iran where they were received by the Arman company.

### C.    The Cover-Up

Behroozian's use of the Sumar company as a transactional middle man whenever he shipped American-made Swagelok manifolds, valves, and connectors to Iran was far from the only way in which he attempted to hide his crimes.  The Arman company used the Sumar company to funnel money to Behroozian as financial compensation for using Comtech to strengthen the economy of a state sponsor of terrorism instead rather than to earn an honest living.  Additionally, while some of these payments were made in U.S. dollars, Behroozian also received $247,601 in "hawalas."  "Hawalas" are an informal Middle Eastern value transfer system which was used to further conceal the Arman company's payments to Behroozian.

In January of 2013, an Iranian national affiliated with the Arman company requested that Behroozian supply American-made Swagelok manifolds and other industrial equipment.  In October of 2013, Behroozian created an invoice for the equipment's sale and then submitted an Electronic Export Information (EEI) in which he made several false statements.  Behroozian's EEI claimed that the destination for the shipment at issue was the U.A.E. when in reality, the Arman company received it in Iran in November of 2013.  Additionally, the EEI falsely stated that the shipment was worth $11,000 when the true value of the equipment Comtech provided to the Arman company in said shipment was $55,000.

## II.    LAW AND ARGUMENT

### A.    The Guidelines Benchmark Was Correctly Calculated Consistent with the Statutory Maximums

The United States concurs with the factual conclusions in the PSR.  The government also agrees that the total offense level is 23, based on a criminal history category of I.  Although the Supreme Court held in *Booker* that the Guidelines are advisory, sentencing courts must still

"consult [the] Guidelines and take them into account when sentencing." *United States v. Pugh*, 515 F.3d 1179, 1188 (11th Cir. 2008) (*quoting Booker*, 543 U.S. at 264); *United States v. Booker*, 543 U.S. 220, 222 (2005).  In *Nelson*, the Supreme Court held that district courts should "first calculate the Guidelines range" when beginning sentencing proceedings. *Nelson v. United States*, 555 U.S. 350, 351 (2009).  Additionally, the Court noted that while the "Guidelines should be the starting point and the initial benchmark," courts must also consider the § 3553(a) factors when determining the proper sentence. *Id*.

As this Court is well-aware, in keeping with *Booker*, Courts should follow a three-step sentencing procedure. *Booker*, 543 U.S. 220 (2005).  The Court must first determine the applicable Guidelines range.  As such, the sentencing judge is entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence, as well as all those relevant to the determination of a non-Guidelines sentence. Second, the Court must consider whether a departure from the Guidelines range is appropriate.  Finally, the Court must consider the applicable Guidelines range, along with all of the factors listed in section 3553(a), and determine the sentence to impose. *Id*.

Additionally, "*Booker* requires that the sentence imposed by the district court be reasonable." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005) (citing *Booker*, 543 U.S. at 260).  For sentencing purposes, reasonableness is assessed both substantively and procedurally. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).  The Court must "provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review." *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006).  The circuit court determines whether a sentence is substantively reasonable by reviewing it and then deciding whether its length is reasonable in light of the factors listed in 18 U.S.C. § 3553. *United*

*States v. Yopp*, 453 F.3d 770, 774 (6th Cir. 2006).

A sentence within the Guidelines range carries with it a presumption of reasonableness. *Rita v. United States*, 551 U.S. 338, 349–54 (2007) (holding that a federal appellate court may apply a non-binding presumption of reasonableness to a within-Guidelines sentence). However, it is a rebuttable presumption of reasonableness rather than a *per se* presumption. *United States v. Richardson*, 437 F.3d 550, 554 n.2 (6th Cir. 2006). Appellate courts are still responsible for reviewing all sentences for reasonableness. *Booker*, 543 U.S. at 260.

**B.    The § 3553(a) Factors Support Imposition of a Significant Sentence**

Review of the applicable statutory sentencing factors codified at 18 U.S.C. § 3553(a) supports the imposition of a significant sentence for Behroozian's crimes. Section 3553(a)(2) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. Under Section 3553, those purposes are as follows:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. 3553(a)(2)(A)–(D). Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing

Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *Id.* at 3553(a).

After *Booker*, all defendants are free to argue mitigating characteristics about themselves, their families, their life's work and intentions, or facts of their cases that have previously been forbidden from consideration by a strict interpretation of the Guidelines. *Id.* at 3553(a)(1). Given that most of the arguments under this heading will come from the defendants themselves, the United States will respond, if necessary, to such arguments at the time of sentencing. Here, the United States requests a sentence that comports with the central command of 18 U.S.C. § 3553(a)—that sentencing courts are to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of punishment. *Id.* at 3553(a).

### 1.      Nature and Circumstances of the Offense

For over 12 years, Behroozian illegally exported American industrial equipment to an Iranian company in direct and deliberate violation of the embargo and trade sanctions which the U.S. had imposed upon one of the world's most infamous state sponsors of terrorism. The Swagelok manifolds, valves, and connectors which the Arman company obtained from Behroozian benefited the Iranian gas and petrochemical industry. As such, not only did Behroozin's crimes diminish the effectiveness of American trade sanctions against one of our nation's oldest adversaries, they also undermined America's national security by strengthening the economy of a country whose government is a state sponsor of international terrorism.

Moreover, Behroozian actively attempted to conceal his crimes by using a middle man company to disguise them as legitimate business transactions. Behroozian was sometimes financially compensated in ways designed to hide the fact that he was being paid by the Iranian Arman company. Behroozian also sought to cover up his crimes by repeatedly lying on an EEI

he submitted to the U.S. Department of Commerce.

As the facts show, the nature and circumstances of the offense in this case are extremely serious and trigger potential national security implications.  The United States submits that a sentence of imprisonment is warranted to account for the serious nature and circumstances of the offense.

> **2.      The Statutory Purposes of 3553(a)**
>
> *a.      To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

One of the factors the Court must consider in imposing sentence under 18 U.S.C § 3553(a) is the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).  Here, the Court's sentence will reflect the severity of Behroozian's crimes, his repeated efforts to conceal them, and the fact that he spent over 12 years committing said crimes.

> *b.      To Afford Adequate Deterrence to Criminal Conduct*

Another factor the Court must consider in imposing sentence under 18 U.S.C. § 3553(a) is the need for the sentence to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B).  In this case, the Court's sentence will deliver a powerful message of specific deterrence to Behroozian, as well as to other similarly situated individuals who may consider such acts and need a strong message of general deterrence to dissuade them from aiding America's enemies abroad by committing criminal conduct on an international scale.  Given that Behroozian's crimes strengthened a key industry in one of our country's most dangerous foreign adversaries, it is of the utmost importance that he receive a sentence long enough to act as general deterrent for other would-be offenders.

## III.    CONCLUSION

Based upon the foregoing, the United States of America respectfully requests that this Court consider the seriousness of the offense, the criteria established in 18 U.S.C. § 3553(a), and the Guidelines. The government asks for a sentence of imprisonment meeting the ends of justice and which is sufficient, but not greater than necessary based upon the facts of this case.

Respectfully submitted,
BENJAMIN C. GLASSMAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF OHIO

s/ Douglas W. Squires
DOUGLAS W. SQUIRES (0073524)
S. COURTER SHIMEAL (0090514)
TIMOTHY D. PRICHARD(0059455)
Assistant United States Attorneys
Southern District of Ohio

s/ William Mackie
WILLIAM MACKIE
Senior Trial Attorney
Counterintelligence and Export Control Section
National Security Division
United States Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served electronically this 17th day of

October 2019, on opposing counsel.

s/ Douglas W. Squires
DOUGLAS W. SQUIRES
Assistant U.S. Attorney
Southern District of Ohio